UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MT. CLEMENS AUTO CENTER, INC. d/b/a
HYUNDAI OF JACKSON,

                  Plaintiff,                    Case No. 11-14878
                                                Honorable David M. Lawson

v.

HYUNDAI MOTOR AMERICA,

                  Defendant.
_____ /

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

Before the Court is a motion by the plaintiff to remand this case to state court. The plaintiff, Mt. Clemens Auto Center, Inc. d/b/a Hyundai of Jackson, filed this action in the Jackson County, Michigan circuit court. The plaintiff seeks declaratory and injunctive relief prohibiting the defendant from terminating an automobile dealership agreement until January 31, 2012. The defendant, Hyundai Motor America, removed the case, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332(a). There is no question that the citizenship of the parties is diverse, but the plaintiff contends that the defendant has not offered sufficient evidence that it is more likely than not that the amount in controversy exceeds $75,000. The Court agrees, and therefore the motion to remand will be granted.

I.

Plaintiff Mt. Clemens Auto Center is a Delaware corporation with its principal place of business in Jackson, Michigan. Defendant Hyundai Motor America is a California corporation with its principal place of business in Fountain Valley, California. The defendant and the plaintiff entered into a Hyundai Dealer Sales and Service Agreement ("DSSA") on December 25, 2009, which

established the plaintiff as an authorized dealer of Hyundai products.  Among other things, the DSSA requires the dealer to "maintain flooring and lines of credit adequate to meet its ongoing obligations."  Def.'s Resp., Ex. A, Decl. of Guy Warner, Ex. 2 to Decl., DSSA ¶ 13(B).

On April 14, 2011, the defendant became aware that the plaintiff's floor plan line of credit with JPMorgan Chase Bank had been placed on "Finance Hold."  On May 12, 2011, the defendant sent the plaintiff a letter notifying the plaintiff that it had thirty days, or until June 12, 2011, to rectify the situation or the defendant would enforce its remedies under the DSSA.  Tibor Gyarmati, the plaintiff's owner, responded to the defendant's correspondence on June 10, 2011, informing the defendant that he had finalized a purchase agreement on his Kia franchise, which would result in a cash infusion of $750,000 to $1,000,000 into Hyundai of Jackson, and applied for loans from four different banks.

The DSSA states that the agreement may be terminated by Hyundai on sixty days notice if the "Dealer [fails] to establish or maintain required net working capital or adequate wholesale credit."  Def.'s Resp., Ex. A, Decl. of Guy Warner, Ex. 2 to Decl., DSSA ¶ 16(B)(2)(k).  If the "Dealer has failed to perform adequately its sales, service or parts responsibilities or to provide adequate dealership facilities," *id.* at ¶ 16(B)(3), the dealer will be allowed 180 days to correct the deficiency, and failing that, the DSSA may be terminated "upon sixty (60) days notice or such other notice as may be required by law."  *Ibid.*

On August 4, 2011, the defendant sent the plaintiff a notice of termination.  The letter of termination stated that the plaintiff failed to operate the dealership successfully because the plaintiff did not maintain adequate financing. Hyundai invoked paragraph 16(B)(2)(k) of the DSSA in its letter.  Hyundai stated that

-2-

> [m]ore than forty-five (45) days have passed since [Hyundai]'s deadline to re-establish credit and, despite [Hyundai]'s demands that this condition be corrected, Hyundai of Jackson has failed or been unable to correct this condition (a breach of the Agreement). Hyundai of Jackson has now continuously failed to maintain adequate wholesale credit for business at its Approved Location since at least April 14, 2011. HMA believes this lengthy, substantial and material breach of the Agreement curtails Hyundai of Jackson's ability to reasonably serve the interests of the public. . . .

Pl.'s Mot. to Remand, Ex. 6, Termination Letter at 1-2. Because of the breach of the DSSA, Hyundai said "that the Agreement shall be terminated within 90 days of your receipt of this letter, which we calculate to be no later than November 7, 2011." *Ibid.*

On November 4, 2011, Mr. Gyarmati sent via facsimile to Brian O'Malley, the defendant's general manager for its central region, a letter indicating that he had received a letter of intent to purchase the dealership assets, and that he wished to sell the assets of Hyundai of Jackson to a yet-to-be-formed entity, which was represented by Richard LaLonde, for approximately $250,000.

Also on November 4, 2011, the plaintiff filed suit in the Jackson County, Michigan circuit court seeking a declaratory ruling on the application of state law and a preliminary injunction preventing termination of the DSSA until January 31, 2012. On the same day, the plaintiff obtained a temporary restraining order from the Jackson County circuit court preventing termination of the agreement.

The defendant removed the case to this Court on the same day. The notice of removal alleges that "[t]he complaint seeks damages in an amount that exceeds $75,000." Notice of Removal ¶ 4. That statement is false. The complaint contains no prayer for damages. The complaint asks only for declaratory and injunctive relief, limited to enjoining the dealership termination until January 31, 2012.

II.

-3-

The dispute in this case boils down to the interpretation of language in the Michigan Motor Vehicle Dealer Act, Mich. Comp. Laws §§ 445.1561 *et seq.*, which sets forth the minimum advance notice an automobile manufacturer must give its dealer before terminating a franchise agreement. If the cause for termination "relates to the performance of the new motor vehicle dealer in sales or service," the notice period must be 180 days.  Mich. Comp. Laws § 445.1567(3)(d).  If the cause for termination is a "general" breach of the dealership agreement, the manufacturer must provide notice "not less than 90 days prior to the effective date of the termination."  Mich. Comp. Laws § 445.1570(a).  Finally, if the termination is provoked by insolvency, closure of the dealership for seven consecutive days, the dealership owner's conviction of a felony, revocation of the dealership license, or fraudulent misrepresentation, the notice period is fifteen days.  Mich. Comp. Laws § 445.1570(c)(i)-(v).

The plaintiff contends that its failure to maintain its floor plan line of credit affects its performance in sales and therefore it is entitled to 180 days notice.  The defendant says the breach is a general one to which the 90-day notice requirement applies.  There is no Michigan decisional law that sheds any light on a construction of the statute that might resolve the dispute.

Before this Court may do so, the defendant, as the removing party, must establish that the Court has subject matter jurisdiction to adjudicate the case.  *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 462 (6th Cir. 2010).  The parties agree on the basics of that point: a civil action brought in a state court may be removed to federal court if the federal court would have had original jurisdiction, 28 U.S.C. § 1441(a); a party invoking the federal court's jurisdiction has the burden of establishing subject matter jurisdiction, *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559 (6th Cir. 2010) (citing *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1194-95

(2010)); and when jurisdiction is based on diversity of citizenship, "the matter in controversy [must] exceed[] the sum or value of $75,000, exclusive of interest and costs," 28 U.S.C. § 1332(a)(1).

Despite the defendant's allegation to the contrary, the plaintiff does not seek money damages in its complaint, only declaratory and injunctive relief that allows it a full 180 days before the dealership franchise can be terminated, which the plaintiff calculates to be January 31, 2012. How is the "value" of the controversy determined in such a case? As the Sixth Circuit has explained, "[o]ne principle is well-settled: for actions seeking a declaratory judgment, we measure the amount in controversy by 'the value of the object of the litigation.'" *Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 770 (6th Cir. 2009) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1997)). The Sixth Circuit has interpreted that to mean that "[w]here a party seeks a declaratory judgment, the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) (internal quotations omitted). In the case of injunctions, the Sixth Circuit has "observed that the 'costs of complying with an injunction . . . may establish the amount-in-controversy [sic].'" *Cleveland Housing Renewal Project*, 621 F.3d at 560 (quoting *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006)).

The plaintiff argues that the value of its Hyundai franchise comes nowhere near the jurisdictional threshold because its business essentially is dead in the water. It asserts that for the last 90 days since the termination letter was sent, it sold only four cars in August 2011, and no cars in September or October 2011. Extrapolating its sales figures, the plaintiff contends that the dealership's value over the next 90 days cannot possibly amount to $75,000.

-5-

The defendant counters this argument with two of its own.  First, the defendant points to the letter of intent sent to the plaintiff in which a third party has agreed to purchase the dealership's assets for $250,000.  The defendant reasons that once the dealership agreement has been terminated, the plaintiff will have no interest in the dealership that it could transfer to a third party, and therefore the value of the object of the litigation — the franchise — is well over $75,000.  Second, the defendant submitted a declaration from Guy Warner, its marketing manager for Hyundai's central region.  Warner avers that he is familiar with the value of Hyundai dealerships because he has been employed in the automotive industry for over twenty years and has reviewed dozens of dealership asset transfer agreements.  He concludes that "the value of the Hyundai dealership in Jackson, Michigan is in excess of $75,000."  Def.'s Resp., Ex. A, Decl. of Guy Warner ¶ 7.  How Mr. Warner arrived at his conclusion and what he considered in this case remains a mystery.

The defendant does not face a "daunting burden" of establishing the amount-in-controversy threshold.  *See Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp.*, 130 S. Ct. 1181.  It need only "show by a preponderance of the evidence that the amount in controversy requirement has been met."  *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (citing *Gafford*, 997 F.2d at 158).  To meet that burden, the defendant "may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal."  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755-56 (11th Cir. 2010) (collecting cases).  However, the removing party must provide *facts* in support of its removal notice.  Conclusory statements alone do not establish the amount in controversy.  *See Garza v. Bettcher Indus., Inc.*, 752 F. Supp. 753, 763-64 (E.D. Mich. 1990) (citing *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936) (stating that if a party's "allegations of jurisdictional facts are

-6-

challenged by [the] adversary in any appropriate manner, [it] must support them by competent proof")). Moreover, "because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir. 2006) (quoting *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996)).

The argument that the $250,000 letter of intent satisfies the required showing has some appeal, but only on the surface. When the letter of intent is examined, it does little to establish the "value" of the franchise itself. And it is the franchise — not the dealership as a whole — that is the object of the controversy.

The notice of the letter of intent apparently was sent on November 4, 2011 by Gyarmati, the plaintiff's owner, to Hyundai's central region general manager, stating that Gyarmati wished to "sell the assets and Hyundai franchise [he] owns in Jackson, MI." The assets would include "Machinery and equipment; Work in progress; Hyundai and non-Hyundai Parts and Accessories; Intellectual Property (including URL's and websites); Goodwill (including numbers and name);" and a "Non-compete" agreement. Def.'s Resp., Ex. A, Decl. of Guy Warner, Ex. 4 to Decl., Ltr. of Intent. It does not appear that the purchase amount would include inventory or trade fixtures; under the terms of the DSSA, the defendant must repurchase all new, unused, unmodified and undamaged current model Hyundai Motor Vehicles, Hyundai genuine parts and accessories, tools and equipment required or recommended by the defendant, and signs that the defendant required or recommended, upon termination of the DSSA. Def.'s Resp., Ex. A, Decl. of Guy Warner, Ex. 2 to Decl., DSSA ¶ 16.D.3.(a). The other hard assets belong to the plaintiff and their transfer does not depend on the vitality of the franchise. Therefore, the amount in controversy is the value of the plaintiff's business

-7-

as a going concern, which amounts to its goodwill and intellectual property.  *See Pergament v. Frazer* 93 F. Supp. 13, 30-31 (E.D. Mich. 1950) (observing that intangible assets include such things as acquisition of patents, trademarks, and trade names, the goodwill and going concern value of the dealership, acquisition of the dealer's distributor organization, and funds spent on advertising).

"There is no rigid approach for determining questions of . . . valuation." *In re Regency Intern. Flooring, LLC*, No. 09-1146, 2010 WL 4053982, at *8 (W.D. Mich. 2010) (citing *In re Roblin Indus., Inc.*, 78 F.3d 30, 38 (2d Cir. 1996)).  It is particularly difficult to calculate the value of a young business — in this case the parties signed the dealership agreement in December 2009 — because "there is no reliable track record to look back on." *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 23 n.12 (5th Cir. 1974).

Other courts have recognized that an automobile dealership's going concern value is decimated when it loses the ability to carry on its business as the dealer of a particular brand of vehicle. *Matter of Chick Smith Ford, Inc.*, 46 B.R. 515, 519 (Bankr. M.D. Fla. 1985) ("It needs no elaborate discussion to point out the peculiar character of the contractual relationship of the Debtor with the Defendants.  It is a Ford automobile dealership.  It is obvious that the Debtor cannot obtain Ford automobiles from anyone except Ford Motor Company.  Without its ability to carry on the business as a Ford dealership, the going concern value of its business and its good will will be destroyed and no remedy at law would adequately compensate the Debtor for this loss.").  However, the question in the present case is what that value was when this case was removed. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000) (holding that the amount in controversy is assessed at the time the case is removed).

In this case, the defendant makes no attempt to attribute value to the franchise itself.  The letter of intent does not do so.  The plaintiff's statement that the dealership has conducted virtually no sales business since August suggests that the value of the plaintiff's goodwill is *de minimis*.  The Warner declaration raises more questions about value than it answers.  Warner avers that he is familiar with the general value of Hyundai dealerships based on other asset transfer agreements.  But he offers no insight as to how he reached his conclusion that the value of the plaintiff's dealership "is in excess of $75,000."  He does not state what he includes in that valuation, and he makes no effort to tie his opinion to the consideration recited in the letter of intent.  His bald opinion is unexplained and therefore unpersuasive.

The defendant has not offered sufficient evidence of the value of the franchise — the object of the litigation — or the cost of complying with the injunction the plaintiff seeks.  The record does not contain enough facts for the Court to make a determination that the amount in controversy exceeds the jurisdictional threshold.

III.

The defendant has not established that it is more likely than not that the amount in controversy in this case exceeds $75,000.  Therefore, the Court does not have subject matter jurisdiction under 28 U.S.C. § 1332(a), and the case must be remanded.  28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

Accordingly, it is **ORDERED** that the plaintiff's motion to remand [dkt. #4] is **GRANTED**.

It is further **ORDERED** that the case is **REMANDED** to the Jackson County, Michigan circuit court.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   December 12, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 12, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL

-10-